**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

POLAR CORP.,

    Plaintiff,

    v.

CIRCLE K STORES, INC.

    Defendant.

C.A. No. _____

**COMPLAINT**

1.    This is a breach of contract and trademark infringement case. Plaintiff Polar Corp. ("Polar") is an independent family-owned and -operated business. Founded in 1882, Polar sells water, seltzer, soda, and other non-alcoholic beverages in the United States and internationally under the well-known brand POLAR. For example:



2.    Defendant Circle K Stores, Inc. ("Circle K") operates one of the largest chains of convenience stores and gas stations in the world, with over 6,000 Circle K locations in the United States alone.

3.    In November 2005, Circle K applied to register the trademark POLAR POP for various beverage-related goods and services. Polar timely filed an opposition in the TTAB. In

2007, the parties entered into a settlement agreement (the "2007 Agreement") to resolve the opposition proceeding, which limited Circle K's right to use and register POLAR POP. Among other things, Circle K agreed to use POLAR POP to identify *only* straws, straws combined with spoons, cups, and mugs, and to abandon its application to register POLAR POP for convenience store services offering beverages.

4.      The 2007 Agreement expressly acknowledged the parties' belief that, if they abided by the agreement, "no likelihood of confusion will be likely to arise from the Parties' use of their respective marks in their respective fields."

5.      Thereafter, the parties peacefully co-existed for many years. More recently however, Polar learned that Circle K has begun using the mark POLAR POP *to identify beverages*, in clear breach of the 2007 Agreement. For example:



Obviously, cups do not come in "flavors" and consumers do not "sip on an ice-cold" cup.

6.     Circle K also has repeatedly breached the 2007 Agreement by: (i) using POLAR POP to identify an area within a store offering soft drinks and using a modified version of POLAR POP, (ii) using POLAR POP outside of Circle K stores, (iii) using POLAR POP in radio and online advertising, and (iv) registering POLAR POP for prohibited goods and services in foreign jurisdictions, despite the agreement's "worldwide" territorial scope.

7.     As described more fully below, Circle K's conduct also is (i) likely to cause confusion among consumers and/or suggest an affiliation, connection, or association between Polar and Circle K and (ii) dilute the distinctive quality of the POLAR Mark.

8.     Polar has repeatedly attempted to seek an amicable business resolution without success.

9.     Circle K's conduct has irreparably harmed Polar and will continue to irreparably harm Polar and its substantial goodwill. It also has caused and will continue to cause monetary harm in an amount to be determined at trial.

## PARTIES

10.     Plaintiff Polar Corp. is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 1001 Southbridge Street, Worcester, Massachusetts 01610.

11.     On information and belief, Defendant Circle K Stores, Inc. is a Texas corporation with a principal place of business at 1130 West Warner Road, Tempe, Arizona 85284. Circle K is a subsidiary of Alimentation Couche-Tard, Inc., a Canadian corporation with a principal place of business in Laval, Quebec, Canada.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332(a)(1), 1338, and 2201, and this Court's supplemental jurisdiction under 28 U.S.C. § 1367. First, this case arises under the Chapter 15 of the United States Code, including 15 U.S.C. §§ 1114 and 1125. Second, there is complete diversity of parties because Plaintiff Polar is a citizen of Massachusetts and, upon information and belief, Defendant Circle K is a citizen of Texas and Arizona. The matter in controversy exceeds $75,000, exclusive of interest and costs. Third, there is an actual controversy between the parties within this Court's jurisdiction regarding their rights and legal relations under the 2007 Agreement.

13.     This Court has personal jurisdiction over Defendant Circle K because it conducts business in Massachusetts and has committed acts of trademark infringement in Massachusetts.

14.     Defendant owns and operates approximately 14 Circle K brand stores throughout Massachusetts, including in Boston, Salem, Wakefield, and Bridgewater, where the POLAR POP mark is used. In addition to these owner-operated stores, Circle K franchisees operate additional stores throughout Massachusetts, including in Milford, Burlington, Braintree, and Framingham, where the POLAR POP mark also is used.

15.     Defendant further targets Massachusetts residents by marketing itself to potential franchisees in the Commonwealth, promoting its national brand recognition and the ability of franchisees to sell Circle K proprietary products—including products using POLAR POP.

16.     On information and belief, Defendant exercises control over Circle K franchise stores in Massachusetts, including by specifying the products they may sell, procuring fixtures and equipment, optimizing merchandising plans, and providing operational, marketing, and training guidelines, including guidelines specific to branding using Defendant's marks.

17.     Defendant also targets Massachusetts consumers by enabling Massachusetts consumers to locate owner-operated and franchise Circle K brand locations in Massachusetts on its website. Certain Circle K stores in Massachusetts further maintain a presence on social media and on the Internet to target Massachusetts consumers.

18.     Defendant also specifically targets Massachusetts consumers by promoting its brand through sponsorships of local charitable organizations and events in Massachusetts.

19.     Venue is proper in this Court and the Central Division, pursuant to 28 U.S.C. §§ 1391(b) and (c), and Local Rule 40.1(c) and 40.1(d)(1)(C), because this is the division and judicial district where: (i) a substantial part of the events giving rise to the claims occurred and are currently occurring, (ii) where Defendants are subject to personal jurisdiction, and (iii) where the only party residing in the District of Massachusetts resides.

## FACTS

### The POLAR Mark

20.     Polar is an independent, fifth-generation, family-owned and -operated beverage company based in Worcester, Massachusetts. It has continuously and extensively bottled and sold beverages in the U.S. and worldwide for more than 100 years under the POLAR brand. Today, Polar is one of the leading producers of non-alcoholic and seltzer beverages in the U.S.

21.      Polar has sold hundreds of millions of cans and bottles of beverages bearing the POLAR name, representing billions of dollars in sales. In 2022 alone, Polar sold 750,000,000 cans and bottles of beverages bearing the POLAR mark in the U.S., representing approximately $400,000,000 in sales.

22.     Polar owns several incontestable federal trademark registrations for POLAR-formative trademarks in connection with beverages, and it has strong common law rights in the

same. (Hereafter, Polar's common law and federally registered rights in POLAR are collectively referred to as the "POLAR Mark"). The POLAR Mark is well-known and embodies an enormous amount of goodwill accrued over a century.

23. The POLAR Mark appears on a wide range of Polar beverages and beverage packaging, from the famous Polar seltzer sparkling water, to spring water, soda, and mixers including club soda and tonic water. For example:





24.     Polar sells soft drinks and beverages bearing the POLAR Mark nationwide. Polar sells its products wherever beverages are sold, including convenience stores, supermarkets like Kroger, Publix, Safeway, Albertsons, and Wegmans, and in national general merchandise retail stores like Walmart and Costco.

25.     Polar has spent millions of dollars marketing its beverages bearing the POLAR Mark in the past decade.

26.     Polar markets its brand in all channels, including television, print, digital, social media, at point of purchase, and through sponsorships. Its advertising, including its website (https://polarbeverages.com/) and social media accounts on Twitter, Instagram, and Facebook, all prominently feature the POLAR Mark.

27.     Polar's marketing of the POLAR Mark also includes the iconic, 25-foot inflatable polar bear mascot named Orson, who stands year-round atop the Polar beverage factory in Worcester, Massachusetts, alongside Interstate 290:



28.     Polar also promotes its POLAR Mark through its sponsorship of the Boston Red Sox AAA affiliate club, the Worcester Red Sox, who play at the recently constructed POLAR PARK. The venue hosts Worcester Red Sox games, as well as other sporting, music, and cultural events. It is prominently branded with the POLAR Mark throughout:

  

29.     As a result of its longstanding exclusive use of the distinctive POLAR Mark in commerce in connection with beverages, Polar has acquired valid and strong common law trademark rights.

30.     Polar's longstanding exclusive use, widespread marketing, and extensive sales have made the POLAR Mark well-known throughout the country.

31.     In addition to its common law rights, Polar owns incontestable federal trademark registrations for POLAR-formative marks. Those include:

- **POLAR**, Reg. No. 3914067, for Class 32 Drinking water, carbonated soft drinks, blended seltzer water and fruit-based beverages. *See* Exhibit 1.

- POLAR, Reg. No. 84705, for Class 32 natural aerated water. *See* Exhibit 2.

- POLAR, Reg. No. 5388149, for Class 32 Carbonated waters; drinking water; seltzer water; fruit-based beverages; non-alcoholic beverages, namely, carbonated beverages. *See* Exhibit 3.

32.     Polar also owns numerous foreign registrations for the POLAR Mark, including in Canada, the Caribbean Netherlands, Curacao, Ireland, Puerto Rico, and Vietnam.

33.     The POLAR Mark embodies an enormous amount of goodwill and is an immeasurably valuable asset of the company.

**POLAR POP Opposition and the 2007 Agreement**

34.     In 2006, Circle K submitted a trademark application to the USPTO for the mark POLAR POP for use in connection with (i) "drinking straws, straws combined with spoons" in Class 20, (ii) "cups and mugs" in Class 21, and (iii) "convenience store services consisting of an area in a store offering soft drinks through a dispenser for consumption on or off the premises" in Class 35. Given Polar's longstanding rights in the POLAR Mark for soft drinks and beverages, Polar timely filed a Notice of Opposition and commenced discussions with Circle K in an attempt to arrive at a mutually acceptable solution regarding their respective uses of POLAR and POLAR POP.

35.     The parties thereafter signed the 2007 Agreement resolving the opposition proceeding and establishing agreed-upon limits on Circle K's use and registration of the POLAR POP mark.

36.     In order to protect Polar's interest in ensuring no likelihood of confusion as to the source of beverages sold using the POLAR Mark, the 2007 Agreement expressly states, among other Circle K obligations, that:

- Circle K shall use the POLAR POP mark to identify drinking straws, straws combined with spoons in Class 20 and cups and mugs in Class 21 **only** (the "Circle K Goods"). 2007 Agreement ¶ 1.3 (emphasis added).

- Circle K shall **only** distribute and offer to the public the "Circle K Goods" through Circle K stores or the stores of its subsidiaries, licensees or franchisees. 2007 Agreement ¶ 1.4 (emphasis added).

- Circle K shall not use the word POLAR alone without the word POP, and the two words will always be used in the same size font with equal prominence. 2007 Agreement ¶ 1.6.

- Circle K shall restrict its use of POLAR POP when used on beverage dispensers to beverage dispensers located in Circle K stores or in the stores of its subsidiaries, licensees or franchisees, and such use will be limited to the stylized form of the mark currently in use [see Exhibit A], or any other modification approved by Polar. If there are any proposed changes made to the stylized form of the mark as used on beverage dispensers, other than de minimus changes, Circle K shall provide such proposed changes to Polar in advance of implementation for Polar's approval in accordance with Paragraph 2.2 below, Polar's approval not to be unreasonably withheld or delayed. 2007 Agreement ¶ 1.7.

37.    The 2007 Agreement is worldwide in scope, 2007 Agreement ¶ 4, and is to be construed in accordance with the laws of the Commonwealth of Massachusetts. 2007 Agreement ¶ 7.3.

38.    Pursuant to the 2007 Agreement, Circle K was permitted to register POLAR POP at U.S. Reg. No. 3372911 for straws and straws combined with spoons in Class 20, and cups and mugs in Class 21. Circle K expressly abandoned its attempt to register POLAR POP with respect to "[c]onvenience store services consisting of an area in a store offering soft drinks through a dispenser for consumption on or off the premises" in Class 35.

39.    For many years following the execution of the 2007 Agreement, Polar believed that the parties stayed in compliance with its terms in an effort to deter consumer confusion.

## Subsequent Discussions Concerning the 2007 Agreement

40.    In 2018, Circle K approached Polar with a proposal to amend the 2007 Agreement to allow for Circle K's expanded use of POLAR POP. No longer content to limit its use of POLAR POP to identify and sell the permitted Circle K goods—cups, straws, mugs—in Circle K stores, Circle K requested permission to begin using POLAR POP in online and radio advertising, which the 2007 Agreement prohibited.

41.     On or around March 19, 2018, Circle K executives, including Kevin Lewis, Chief Marketing Officer at Alimentation Couche-Tard / Circle K, traveled to Polar's headquarters in Worcester, Massachusetts, to discuss the proposal.

42.     Polar ultimately did not agree to Circle K's request to broaden the scope of permitted uses.

43.     Thereafter, in or around February 2021, Polar learned that Circle K had unilaterally expanded its use of POLAR POP beyond the scope of the 2007 Agreement.

44.     On or around February 19, 2021, Polar sent Circle K a letter outlining its concerns about Circle K's conduct and giving Circle K express notice of its breach of the 2007 Agreement.

45.     In addition to Circle K's out-of-store marketing using POLAR POP, Polar noted that it now appeared that Circle K was beginning to use POLAR POP to identify *beverages*. Not only is such use a breach of the 2007 Agreement, it is directly contrary to the entire purpose of the 2007 Agreement. Circle K's unauthorized use of POLAR POP in this manner is likely to lead to consumer confusion, given Polar's longstanding rights in the POLAR Mark for beverages.

46.     On or around April 6, 2021, the parties conducted a teleconference and discussed Polar's concerns and potential resolutions, including potential licensing arrangements and ways to mitigate confusion. Kevin Lewis participated in that call on behalf of Circle K. During that call, Circle K once again acknowledged the validity of the 2007 Agreement and expressed its desire to amend the agreement to allow for using POLAR POP on social media and the Internet. Polar did not agree to any amendment to the 2007 Agreement during this call.

47.     On or around May 4, 2021, Polar sent Circle K a follow-up letter outlining additional examples of unauthorized and infringing uses of POLAR POP, and asked Circle K for

its response on the potential resolutions discussed the month prior. Circle K did not respond to Polar's May 4 letter.

48.     After discussions ceased between the parties, Circle K continued its unlawful conduct and expanded its encroachment into Polar's beverage market in a manner that gradually became more and more pervasive.

49.     On January 10, 2023, counsel for Polar sent Circle K a cease-and-desist letter and requested a response to discuss resolution of the matter. Circle K has not credibly engaged with the consequences of its actions, which necessitated the filing of this complaint seeking to protect Polar's legal interests and valuable goodwill.

### Circle K's Conduct in Breach of the 2007 Agreement

50.     Circle K has repeatedly, intentionally, and willfully breached both the letter and the spirit of the 2007 Agreement, which the parties expressly acknowledged was entered into so that the parties may use their respective marks in their respective fields without a likelihood of consumer confusion.

51.     Circle K's refusal to engage with Polar, and its expansion of its activities in breach of the 2007 Agreement—after acknowledging in April 2021 the validity of the 2007 Agreement and Polar's concerns about Circle K's conduct—constitutes intentional breach of contract and bad faith.

#### *Unauthorized Use of POLAR POP to Identify Beverages*

52.     Circle K agreed in the 2007 Agreement to use POLAR POP only to identify straws, straws combined with spoons, cups, and mugs. 2007 Agreement ¶ 1.3 ("Circle K shall use the POLAR POP mark to identify drinking straws, straws combined with spoons in Class 20 and cups and mugs in Class 21 only").

53.     More recently, however, Circle K has used POLAR POP to identify ***beverages***, which the 2007 Agreement does not permit. The below graphic from Circle K's website is an example:



(Emphasis added.)

54.     In 2021, the National Association of Convenience Stores reported that the COVID-19 pandemic and its resulting regulations had disrupted sales in convenience stores in 2020, particularly making a "huge impact on self-serve beverages." *See* NACS State of the Industry 2020 Report (April 14, 2021), *available at* https://www.convenience.org/Media/Daily/2021/Apr/14/1-C-Stores-Saw-In-Store-Sales-Growth-2020_Research (last accessed April 23, 2023). In particular, the report noted that cold dispensed beverage sales declined by 7.9% in 2020.

55.     It was around this time that Circle K appeared to have begun focusing heavily on promoting and boosting sales for self-serve beverages in Circle K stores, particularly by using POLAR POP to identify beverages on its social media.

56.     As shown in representative examples below, beginning in late 2020, Circle K's social media accounts published posts describing "POLAR POP" as a "refreshing POLAR POP drink[]," a "cold drink," and having "flavors":









(Emphases added.)

57.     As described above, Polar repeatedly notified Circle K that it had never agreed, and does not agree or consent, to Circle K's use of POLAR POP to identify beverages.

14

*Unauthorized Uses of POLAR POP in Stores*

58.     Circle K agreed in the 2007 Agreement not to use POLAR POP to identify "an area in a store offering soft drinks," which it had sought to register, and to **only** use POLAR POP to identify straws, straws combined with spoons, cups, and mugs.  As a limited exception, Circle K was permitted to use the mark "on its beverage dispensers," *i.e.*, near where the permitted goods were displayed, and only in a specific stylized format as shown below. 2007 Agreement ¶¶ 1.3, 1.6, 1.7, Ex. A.



59.     Circle K agreed in the 2007 Agreement not to use the word POLAR alone without the word POP, and further agreed that the two words would always be used in the same size font with equal prominence. 2007 Agreement ¶ 1.6.

60.     Circle K agreed in the 2007 Agreement to seek Polar's approval if it wished to make more than *de minimis* changes to the stylized POLAR POP on its beverage dispensers. 2007 Agreement ¶ 1.7.

61.     However, upon information and belief, Circle K now uses the POLAR POP Mark to identify "an area in a store offering soft drinks," which is in breach of the 2007 Agreement and directly in conflict with Circle K's agreement to abandon registering POLAR POP for "convenience store services consisting of an area in a store offering soft drinks through a dispenser for consumption on or off the premises."  For example:

| Use *on* beverage dispenser | Use to identify *an area* in a store offering soft drinks |
|---|---|
|  | |

62.     Circle K did not seek or obtain Polar's approval prior to using the POLAR POP Mark on the area above the beverage dispensers, as opposed to *on* the beverage dispenser.

63.     Upon information and belief, Circle K also sometimes uses an unauthorized modified version of the stylized POLAR POP mark in its stores (the "Modified POLAR POP Mark") that emphasizes POLAR. An example is shown below:

| Exhibit A in the 2007 Agreement | Modified POLAR POP Mark |
|---|---|
|  | |

64.     The Modified POLAR POP Mark does not use the words "Polar" and "Pop" in the same size font with equal prominence, and is otherwise materially different than the logo approved in the 2007 Agreement.

65.     Circle K did not seek or obtain Polar's approval prior to using the Modified POLAR POP Mark.

### *Unauthorized Use of POLAR POP Outside Circle K Stores*

66.     Circle K agreed in the 2007 Agreement to only use POLAR POP to identify, distribute, and offer to the public straws, straws combined with spoons, cups, and mugs "through Circle K stores or the stores of its subsidiaries, licensees or franchisees." 2007 Agreement ¶¶ 1.3, 1.4.

67.     Upon information and belief, Circle K is using POLAR POP on exterior signage on coolers and lockers owned by Home City Ice and AmeriGas Propane, as depicted below.

 

68.     In addition, Circle K is using POLAR POP to identify and advertise beverages outside of its stores and on vehicles, which travel around the country, as depicted below:



69.     As described above, Polar has repeatedly notified Circle K that it had never agreed, and does not agree or consent, to Circle K's use of POLAR POP outside of Circle K Stores.

### *Unauthorized Use of POLAR POP in Social Media and Radio Advertising*

70.     Circle K agreed in the 2007 Agreement to use POLAR POP only to identify drinking straws, straws combined with spoons, and cups and mugs, and further only offer those items to the public "through Circle K stores." 2007 Agreement ¶¶ 1.3, 1.4.

71.     The 2007 Agreement does not permit Circle K to use POLAR POP to identify soft drinks or beverages, or to use POLAR POP in social media or radio advertising.

72.     However, as described herein, Circle K has been using POLAR POP in social media posts to identify and advertise beverages.

73.     Circle K has also been using POLAR POP in radio advertising to identify and advertise beverages. For example, a Circle K commercial touting beverages including beer, energy drinks, and "extra large POLAR POP" was aired in or around October 2022.

74.     As described above, Polar repeatedly notified Circle K that it had never agreed, and does not agree or consent, to Circle K's use of POLAR POP in social media or radio advertising.

### *Unauthorized Registration of POLAR POP as a Trademark in Foreign Jurisdictions*

75.     Circle K agreed in the 2007 Agreement to amend its application in the U.S. Patent and Trademark Office to abandon its claim to services in Class 35 and limit its right to use and register POLAR POP to certain enumerated goods in Classes 20 and 21. 2007 Agreement ¶¶ 1.1-1.3.

76.     Circle K agreed that the territorial scope of the 2007 Agreement is "worldwide." 2007 Agreement ¶ 4.

77.     Circle K agreed that the 2007 Agreement is binding on Circle K's affiliates, assignees, and licensees. 2007 Agreement ¶ 7.1.

78.     Polar has recently learned that, after signing the 2007 Agreement, Circle K and/or one or more of its affiliates have applied for and acquired trademark registrations for POLAR POP in words-only and/or stylized formats for goods in Classes *other than* 20 and 21, in various foreign jurisdictions including Canada, Costa Rica, Cuba, Jamaica, India, and Uzbekistan.

79.     Polar has substantially performed all of its obligations under the 2007 Agreement. Polar dismissed without prejudice its opposition to Circle K's registration of POLAR POP in Classes 20 and 21; did not interfere with Circle K's use of the approved stylized POLAR POP mark on beverage dispensers or on straws, drinking straws with spoons, cups, or mugs; and did not itself adopt POLAR POP for Class 20 or Class 21 goods or use it in association with beverage dispensers. 2007 Agreement ¶¶ 2.1-2.4.

80.     Circle K's conduct in breach of the 2007 Agreement appears to be continuing and increasing.

81.     Given the negotiation of the 2007 Agreement, the parties' discussions in 2018 regarding the 2007 Agreement, the communications and notices Circle K received from Polar by 2021 regarding Circle K's conduct in breach of the 2007 Agreement, Circle K's acknowledgement of the validity of the 2007 Agreement in at least 2018 and 2021, and the cease-and-desist letter Circle K received in January 2023, Circle K's conduct in breach of the 2007 Agreement was, and continues to be, knowing, willful, and intentional.

82.     As a direct and proximate result of Circle K's numerous breaches of the 2007 Agreement, Polar has suffered damages, including but not limited to, damage to Polar in the marketplace, lost business, lost opportunity, and loss of goodwill and reputation to Polar and the

POLAR Mark.

83.   As a result of the foregoing, Polar has suffered and will continue to suffer irreparable harm and monetary harm in an amount to be determined at trial.

**Circle K's Infringing Conduct**

84.   Circle K's unauthorized use of POLAR POP to identify beverages in its marketing expanded as time passed and has encroached into Polar's field, in which Polar has used the POLAR Mark to identify beverages for over 100 years.

85.   In or around May 2021, Circle K launched a beverage subscription plan called "Sip & Save" for $5.99 a month. Circle K's Kevin Lewis, who was in discussions about the 2007 Agreement with Polar in 2018 and earlier in 2021, was a spokesperson for this launch. The Sip & Save program heralded a significant expansion in Circle K's use of POLAR POP to impermissibly identify beverages in connection with the line, "what's your favorite sip?", as the examples show below:




(Emphases added.)

86.   Circle K's pervasive unauthorized uses of POLAR POP have resulted in consumers adopting the understanding that POLAR POP is a ***beverage***, not a straw, spoon, cup, or mug.

Examples below show consumers describing various flavors of POLAR POP (such as "lime crush" and "go ape"), "drinking" or "sipping" their POLAR POP, and otherwise identifying POLAR POP *as a beverage*, as the examples show below:





(Emphases added.)

87.    In February 2023, in another example, an individual with over 4,000 subscribers posted to YouTube a video of a new Circle K-branded gas station and store with an inflatable "The World's Biggest Polar Pop ***Drink***" (emphasis added) outside:



(Emphasis added.)

88.    Similarly, the press has adopted the understanding that POLAR POP is a beverage, and not a drinking straw, a straw combined with a spoon, a cup, or a mug. For example, the May 2021 CNBC article quoting Kevin Lewis and describing the Sip & Save Program describes the subscription program as allowing "one tea, coffee, Froster slushy or ***Polar Pop fountain drink*** of their choosing every day." *See* CNBC.com, Circle K Launches Beverage Subscription Program for $5.99 per month (May 5, 2021) (emphasis added), *available at* https://www.cnbc.com/2021/05/05/circle-k-launches-beverage-subscription-program-for-5point99-per-month.html (last accessed April 23, 2023).

89.    Despite the concerns that Polar has raised directly with Circle K, including in January 2023, Circle K has continued to expand its use of POLAR POP to identify beverages. As shown in the more recent examples below, Circle K continues to identify POLAR POP as a beverage by describing it as having "flavors," as well as describing it as "yummy," "ice cold," and something one may "sip":





(Emphases added.)

90.     Circle K's recent use of POLAR POP to identify **beverages** has gone so far as to use POLAR POP to identify beverages in cups that do not even bear the POLAR POP Mark. On or around February 14, 2023, Circle K posted a video on Instagram promoting "a POLAR POP" in a FROSTER cup.



(Emphases added.)

91.     Circle K's pervasive use of POLAR POP as a source identifier for beverages is indisputably junior to Polar's first use of POLAR to identify beverages more than 100 years ago.

92.     Circle K's media and marketing spend dwarfs that of Polar. Upon information and belief, in 2020 Circle K spent around $90 million on global media spend alone, including

approximately $58 million in the United States. Upon information and belief, its overall marketing spend is even higher.

93.     Polar is the senior user and senior registrant of the POLAR Mark for beverages, and Circle K's unauthorized use of POLAR POP to identify beverages is likely to cause confusion among consumers and/or falsely suggest an affiliation, connection, or association between Polar and Circle K.

94.     Given the parties' discussions about Circle K's unauthorized use—as well as Polar's long-standing common-law rights, federal registrations, widespread use, and the 2007 Agreement—it is undisputed that Circle K is keenly aware of Polar's trademark rights.

95.     Circle K's infringing conduct is thus intentional, willful, and ongoing.

96.     The 2007 Agreement expressly states that the parties agree that there will be no likelihood of confusion *if the parties abide by the terms of the agreement*. But as described, Circle K has not abided by the terms of the 2007 Agreement.

97.     Circle K thus acted with knowledge that its conduct would give rise to a likelihood of confusion and trademark infringement.

98.     Circle K's infringing beverage products and Polar's beverage products are marketed and sold to the same and overlapping classes of purchasers.

99.     Circle K and Polar advertise through overlapping marketing channels insofar as they both use the Internet, including the same social media channels, to advertise the relevant goods.

100.     Circle K and Polar sell the relevant goods through overlapping sales channels insofar as they both sell their goods through the same retail stores (*i.e.*, Circle K stores) or the same channels generally.

101.   Circle K's unauthorized use of POLAR POP to identify beverages is likely to cause point-of-sale, initial interest, and post-sale confusion, to the irreparable harm and detriment of Polar and the substantial goodwill it has developed in its Polar Mark.

102.   Circle K's unauthorized use of POLAR POP to identify beverages further causes and is likely to cause forward confusion, reverse confusion, and/or initial interest confusion.

103.   Circle K's unlawful conduct harms Polar because Circle K's pervasive, unauthorized advertising risks usurping Polar's long-standing and senior reputation in the beverage market, hampering Polar's own plans to expand both within and outside the United States.

104.   Given the reverse confusion caused by Circle K's unlawful conduct, corrective advertising is necessary to address the harm caused to Polar and the POLAR Mark.

105.   As a result of the foregoing, Polar has suffered and will continue to suffer irreparable harm and monetary harm in an amount to be determined at trial.

## COUNT I
### (Breach of Contract)

106.   Polar repeats and realleges the allegations contained in paragraphs 1 through 105 above as if fully set forth herein.

107.   The 2007 Agreement is a valid contract between the parties under Massachusetts law.

108.   Polar has substantially performed all of its obligations under the 2007 Agreement.

109.   Circle K has materially breached its obligations under the 2007 Agreement by using POLAR POP to identify beverages. 2007 Agreement ¶ 1.3.

110.   Circle K has materially breached its obligations under the 2007 Agreement by using POLAR POP to identify an area in a store offering soft drinks and using the Modified POLAR

POP Mark without prior approval from Polar. 2007 Agreement ¶ 1.6; *see also* 2007 Agreement ¶ 1.7.

111.    Circle K has materially breached its obligations under the 2007 Agreement by using POLAR POP in advertisements and signs not through Circle K stores. 2007 Agreement ¶¶ 1.3, 1.4.

112.    Circle K has materially breached its obligations under the 2007 Agreement by using POLAR POP in social media and other out-of-store advertising. 2007 Agreement ¶¶ 1.3, 1.4.

113.    Circle K has materially breached its obligations under the 2007 Agreement by applying to register POLAR POP in numerous foreign jurisdictions for prohibited products and classes. 2007 Agreement ¶¶ 1.1-1.3; *see also* 2007 Agreement ¶¶ 4, 7.1.

114.    Each of the aforementioned breaches constitute separate breaches of the 2007 Agreement.

115.    Each of the aforementioned breaches were knowing, willful, and intentional.

116.    As a direct and proximate result of Circle K's breaches of the 2007 Agreement, Polar has suffered damages, including but not limited to, damage to Polar in the marketplace, including lost business, lost opportunity, and loss of goodwill and reputation, as well as damage to Polar's ability to expand into other markets.

## COUNT II
### (Declaratory Judgment)

117.    Polar repeats and realleges the allegations contained in paragraphs 1 through 116 above as if fully set forth herein.

118.    Since signing the 2007 Agreement, Circle K continued to apply to register and maintained POLAR POP as a trademark for Classes other than 20 and 21 worldwide.

119.   Circle K agreed in the 2007 Agreement not to apply to register POLAR POP as a trademark for Classes other than 20 and 21. 2007 Agreement ¶ 7.1.

120.   The territorial scope of the 2007 Agreement is worldwide. 2007 Agreement ¶ 4.

121.   There is actual controversy between the parties as to the effect of Paragraphs 4 and 7.1 of the 2007 Agreement.

122.   Polar is entitled to a declaration that Circle K was not entitled to apply for trademark registrations for POLAR POP for Classes other than 20 and 21 worldwide.

**COUNT III**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

123.   Polar repeats and realleges the allegations contained in paragraphs 1 through 122 above as if fully set forth herein.

124.   In addition to the express contractual provisions in the 2007 Agreement, there is an implied covenant that the parties shall act in good faith, deal fairly with one another and not undertake efforts that would deprive the other of the benefits of the 2007 Agreement.

125.   Polar has at all material times acted in good faith and dealt fairly with Circle K in connection with the rights, responsibilities, and obligations under the 2007 Agreement.

126.   In contrast, Circle K has failed to act in good faith and to deal fairly with Polar. The stated purpose of the 2007 Agreement is to deter consumer confusion in the use of the parties' respective marks in their respective fields. Circle K has not acted in the spirit of the 2007 Agreement and its actions set forth above, including its repeated use of POLAR POP to identify beverages, its use of POLAR POP to identify an area of the store offering soft drinks despite agreeing to abandon its attempt to register POLAR POP for convenience store services consisting of an area in a store offering soft drinks through a dispenser for consumption on or off the premises,

and its flagrant promotion of POLAR POP on social media and other non-store channels, all directly contradict the purpose of the 2007 Agreement.

127.    As a result of Circle K's bad faith conduct and unfair dealing, Circle K has deprived Polar of the benefits it was entitled to receive under the 2007 Agreement.

128.    As a direct and proximate result of Circle K's breaches of the implied covenant of good faith and fair dealing, Polar has suffered damages, including but not limited to, damage to Polar in the marketplace, including lost business, lost opportunity, and loss of goodwill and reputation.

**COUNT IV**
**(Trademark Infringement—15 U.S.C. § 1114)**

129.    Polar repeats and realleges the allegations contained in paragraphs 1 through 128 above as if fully set forth herein.

130.    As described above, Polar owns the distinctive and federally registered POLAR Mark as depicted in at least the following incontestable registrations: U.S. Reg. Nos. 3914067, 84705, and 5388149.

131.    Polar's ownership and exclusive use in commerce of the POLAR Mark for beverages predates by many years the use by Circle K of POLAR POP for beverages.

132.    Upon information and belief, Circle K's conduct is willful and intentional and intended to free-ride off the goodwill associated with the POLAR Mark. Circle K is and was at all relevant times both actually and constructively aware of Polar's prior use, ownership, and registration, and Circle K's conduct is therefore also willful and intentional.

133.    Circle K uses POLAR POP in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its cups, straws, and beverage products.

134.    Circle K's use in commerce of POLAR POP in connection with beverages, as described above, constitutes infringement of at least the trademarks that are the subjects of U.S. Reg. Nos. 3914067, 84705, and 5388149 in violation of 15 U.S.C. § 1114 in that it is without Polar's consent and is likely to cause confusion, mistake, and/or deception among consumers.

135.    As a direct and proximate result of Circle K's violations of 15 U.S.C. § 1114, Polar has been and will continue to be damaged.

136.    Upon information and belief, Circle K has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Polar as a result of its wrongful conduct.

137.    Circle K's conduct is causing and will continue to cause Polar to suffer irreparable harm and, unless Circle K is restrained, Polar will continue to be so damaged, because it has no adequate remedy at law.

## COUNT V
### (False Designation of Origin—15 U.S.C. § 1125(a))

138.    Polar repeats and realleges the allegations contained in paragraphs 1 through 137 above as if fully set forth herein.

139.    As described above, Polar owns valid and protectable rights in the distinctive POLAR Mark for beverages.

140.    Polar's ownership and exclusive use in commerce of the POLAR Mark for beverages predates the use by Circle K of POLAR POP for beverages.

141.    Upon information and belief, Circle K's conduct is willful and intentional and intended to free-ride off the goodwill associated with the POLAR Mark. Circle K is and was at all relevant times both actually and constructively aware of Polar's prior use, ownership, and registration, and Circle K's conduct is therefore also willful and intentional.

142.    Circle K uses POLAR POP in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its beverages.

143.    Circle K's use in commerce of POLAR POP on beverages, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Circle K with Polar and/or as to the origin, sponsorship, or approval by Polar of Circle K's goods, services, or commercial activity.

144.    As a direct and proximate result of Circle K's violations of 15 U.S.C. § 1125, Polar has been and will continue to be damaged.

145.    Upon information and belief, Circle K has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Polar as a result of its wrongful conduct.

146.    Circle K's conduct is causing and will continue to cause Polar to suffer irreparable harm and, unless Circle K is restrained, Polar will continue to be so damaged, because it has no adequate remedy at law.

## <u>COUNT VI</u>
### (Trademark Infringement—Mass. Gen. L. C. 110H §§ 11-14, 16)

147.    Polar repeats and realleges the allegations contained in paragraphs 1 through 146 above as if fully set forth herein.

148.    As described above, Polar owns valid and protectable rights in the distinctive POLAR Mark for beverages.

149.    Polar's ownership and exclusive use in commerce of its POLAR Mark for beverages predates by many years the use by Circle K of POLAR POP for beverages.

150.    Upon information and belief, Circle K's conduct is willful and intentional and intended to free-ride off the goodwill associated with the POLAR Mark. Circle K is and was at all relevant times both actually and constructively aware of Polar's prior use, ownership, and registration, and Circle K's conduct is therefore also willful and intentional.

151.    Circle K's adoption and use of a confusingly similar designation—POLAR POP— in Massachusetts and elsewhere in connection with the sale, offering for sale, distribution, and/or advertising of its beverages is likely to cause confusion among relevant consumers.

152.    Circle K's use of a confusingly similar mark, as described above, constitutes trademark infringement in violation of Mass. Gen. Laws c. 110H §§ 12 and 14 in that it is without Polar's consent and is likely to cause confusion, mistake, and/or deception among consumers, all to the irreparable injury of Polar and the goodwill it has developed in the POLAR Mark.

153.    As a direct and proximate result of Circle K's violations of Mass. Gen. Laws c. 110H §§ 12 and 14, Polar has been and will continue to be damaged.

154.    Upon information and belief, Circle K has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to Polar as a result of its wrongful conduct.

155.    Circle K's conduct is causing and will continue to cause Polar to suffer irreparable harm and, unless Circle K is restrained, Polar will continue to be so damaged, because it has no adequate remedy at law.

## <u>COUNT VII</u>
### (Massachusetts Statutory Dilution—Mass. Gen. L. C. 110H § 13)

156.    Polar repeats and realleges the allegations contained in paragraphs 1 through 155 above as if fully set forth herein.

157.    As described above, Polar owns valid and protectable rights in the distinctive POLAR Mark for beverages via registration and common law.

158.    Polar's ownership and exclusive use in commerce of its POLAR Mark for beverages predates by many years the use by Circle K of POLAR POP for beverages.

159.    Circle K's use of POLAR POP for beverages has and will create a likelihood of injury to Polar's business reputation and/or a likelihood of dilution of the distinctive quality of the POLAR Mark in violation of Mass. Gen. Laws c. 11H § 13.

160.    As a direct and proximate result of Circle K's dilution of the POLAR Mark, Polar has been and will continue to be damaged.

161.    Circle K's conduct is causing and will continue to cause Polar to suffer irreparable harm and, unless Circle K is restrained, Polar will continue to be so damaged, because it has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Polar respectfully requests the following relief:

A.    That this Court enter judgment that: (i) Circle K has breached the 2007 Agreement, (ii) Circle K has breached the implied covenant of good faith and fair dealing, (iii) Circle K has infringed the POLAR Mark in violation of 15 U.S.C. § 1114, (iv) Circle K's use of POLAR POP is a false designation of origin in violation of 15 U.S.C. § 1125, (v) Circle K has infringed the POLAR Mark in violation of Mass. Gen. L. C. 110H §§ 11-14, 16, (vi) Circle K has diluted the POLAR Mark in violation of Mass. Gen. L. C. 110H § 13, and (vii) that all of the foregoing wrongful activities by Circle K were willful, with the knowledge of the wrongfulness of the infringing conduct, and/or in bad faith;

B.    That this Court enter a declaratory judgment that Circle K was not entitled to register POLAR POP as a trademark, worldwide, other than for Classes 20 and 21;

33

C.     That this Court enjoin Circle K, its employees, agents, servants, and all in privity or acting in concert with any of them, from using the POLAR POP Mark, or any derivative(s) thereof or any design(s) confusingly similar thereto, in commerce on or in connection with Circle K's offerings;

D.     That this Court enter an injunction against further infringement and dilution of the POLAR Mark, further false designation of origin concerning the POLAR Mark, and further unfair competition and unfair or deceptive acts or practices related thereto, by Circle K and its employees, agents, servants, and all in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising all products that use a copy, reproduction, or colorable imitation of the POLAR Mark;

E.     That this Court enter an order directing the destruction of: (i) all infringing products, and (ii) all advertising materials related to the infringing products in Circle K's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

F.     That this Court require an accounting of profits by Circle K;

G.     That this Court disgorge and award to Polar Circle K's profits, Polar's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), 1116, and/or 1117, and Mass. Gen. L. C. 110H §§ 11-14, 16;

H.     That this Court direct Circle K to surrender or otherwise affirmatively abandon all trademark registrations and pending applications for POLAR POP in the U.S. and abroad;

I.     That this Court award Polar monetary damages needed to employ corrective advertising to counter the infringing use of POLAR POP in Circle K's advertising;

34

J.      That this Court make a finding that this is an exceptional case pursuant to 15 U.S.C.

§ 1117 due to Circle K's willful infringement and bad faith, entitling Polar to the costs of the action

and its reasonable attorney fees; and

K.      That this Court award Polar such other and further relief that this Court deems just

and proper.

## JURY DEMAND

Polar demands a trial by jury of all claims so triable.

****

Respectfully submitted,

POLAR CORP.
*By its attorneys*,

*/s/ Mark S. Puzella*
ORRICK, HERRINGTON & SUTCLIFFE LLP
Mark S. Puzella (BBO# 644850)
Caroline K. Simons (BBO# 680827)
Robert M. O'Connell, Jr. (BBO# 559667)
222 Berkeley Street, Suite 2000
Boston, Massachusetts 02116
Telephone:   617.880.1800
Facsimile:   617.880.1801
mpuzella@orrick.com
csimons@orrick.com
robert.oconnell@orrick.com

Dated: April 24, 2023